UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAMELA R.,[1]

                                                                            Plaintiff,                     Case # 21-CV-30-FPG

v.                                                                                                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                                           Defendant.
_____

## INTRODUCTION

Plaintiff Pamela R. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 12, 14. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In October 2018, Plaintiff applied for DIB with the Social Security Administration ("the SSA"). Tr.[2] 207. She alleged disability since June 3, 2017. *Id.* On August 7, 2020, Administrative Law Judge Seth I. Grossman ("the ALJ") issued a decision finding that Plaintiff is not disabled.

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 8.

1

Tr. 15-28. On November 17, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the

claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff has severe impairments of status post

neck surgery and early arthritis of the right knee. *Id.* At step three, the ALJ found that her impairments do not meet or medically equal any Listings impairment. Tr. 20.

Next, the ALJ determined that Plaintiff retains the RFC to perform a reduced range of light work. *Id.* At step four, the ALJ found that Plaintiff could perform past relevant work. Tr. 26-27. Accordingly, the ALJ concluded that Plaintiff is not disabled. Tr. 27.

## II. Analysis

Plaintiff argues the ALJ's decision is erroneous on three grounds. The Court examines each argument in turn.

### a. Inconsistency between the DOT and the Vocational Expert's Testimony

At step four, the ALJ determined that Plaintiff was capable of performing her past relevant work. Tr. 26-27. In reaching that conclusion, the ALJ cite the testimony of the vocational expert ("VE"), who classified Plaintiff's past work as a "shift manager" at Dunkin' Donuts as that of a "fast food worker" under the DOT. Tr. 26-27; *see also* 74. The VE testified that the DOT treats this job as one at the light exertional level, and she therefore concluded that someone with Plaintiff's RFC could perform the job as it is generally performed. *See* Tr. 74-75. Relying on the VE's testimony, which he found to be consistent with the DOT, the ALJ concluded that Plaintiff could still perform the job of fast wood worker as it is generally performed. *See* Tr. 20, 27.

Plaintiff argues that, in fact, the VE's testimony regarding the demands of the "fast food worker" job are inconsistent with the DOT. Specifically, the VE testified that a fast food worker must be on her feet "six to seven hours" each workday, with "*no* sitting." Tr. 75 (emphasis added). Plaintiff alleges that this is different than the DOT, which rates the job as light work, which under the relevant regulations "requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday," with sitting occurring "*intermittently* during the remaining time."

*Hayes v. Colvin*, No. 12-CV-1566, 2015 WL 1033058, at *6 (N.D.N.Y. Mar. 9, 2015) (emphasis added).  Plaintiff asserts that the ALJ had an "affirmative duty . . . to identify and resolve" this conflict, *Stover v. Comm'r of Soc. Sec.*, No. 17-CV-1029, 2018 WL 5262463, at *3 (W.D.N.Y. Oct. 23, 2018), and his failure to do so merits remands.  *See* ECF No. 12-1 at 20-21.

The Court is not persuaded.  Contrary to Plaintiff's argument, the ALJ could reasonably conclude that the VE's testimony was consistent with the DOT.  It is helpful to read the VE's testimony in context:

> [ALJ:]  . . . .  Fast food worker, okay, could you give me the DOT?
>
> [VE:]  Certainly, 311.72-010 an SVP of 2, unskilled and it's light.
>
> [ALJ:]  Okay, so if a person could do the full range of light work they could do that job, correct?
>
> [VE:]  Correct, Your Honor.  That's according to the DOT.
>
> [ALJ:]  Right, that's obvious.  And how does, so let's just look at the description of the job as performed what did she say it was.  It was, this is at Dunkin' Donuts that can walk and stood four to five hours.  She lifted five to 25 pounds of [inaudible].  Okay, so she could do, that's a little more than I, what did you lift that was 25 pounds in that job? Well, let me just look at it. Okay, I just have one other question. If a person was limited to four hours instead of the six hours standing and walking could otherwise do light work do could they do that job in your opinion?
>
> [VE:] In my opinion, no, Your Honor.  That job you have to be on your feet six to seven hours.  It has no sitting.

Tr. 74-75.

One can reasonably infer from this exchange that the VE concurred with the DOT's view that a person with an RFC of light work would be capable of performing the exertional demands of the job of fast food worker; hence her unequivocal agreement that a person who could "do the full range of light work [] could do that job."  Tr. 74.  Indeed, it is clear that the VE is using the phrase "on your feet [for] six to seven hours" in a colloquial manner, as shorthand for the demands

of light work. Tr. 75. She uses the same phrasing elsewhere in her testimony. *See* Tr. 78 ("[I]n my opinion they're totally light jobs. They have to be on their feet for the six hours, seven hours.").

The subsequent remark about "no sitting" is made in the context of explaining that a person limited to four hours of standing and walking—and thus, by implication, four hours of sitting—could not perform the job. Given the nature of the ALJ's question, the VE's statement that there is "no sitting" can be reasonably understood to mean that a fast food worker cannot sit for an extended, four-hour duration each workday. It cannot be reasonably interpreted to mean that a fast food worker is literally unable to sit down at all during the workday: the VE clearly states that the job requires a worker to be on her feet "six to seven hours" of an eight-hour workday, which necessarily means that the worker may be sitting for the remaining hours of the workday. Tr. 75.

Accordingly, the ALJ could reasonably conclude that the VE's testimony and the DOT were consistent insofar as they both classified the "fast food worker" job as one at the "light exertional level as generally performed." Tr. 27. As a result, the ALJ did not commit any error with respect to his treatment of the VE's testimony.

### b. Dr. Ghazi's Testimony

On several grounds, Plaintiff argues that the ALJ unreasonably relied on the testimony of independent medical expert Darius Ghazi, M.D.

#### i. Light Work

Plaintiff first asserts that the ALJ cajoled Dr. Ghazi into reaching the conclusion that Plaintiff could perform the standing and walking requirements of light work. Although Plaintiff cites no legal authority to support her argument, *see* ECF No. 12-1 at 22-25, the Court accepts as uncontroversial the proposition that an ALJ may not cherry-pick—let alone affirmatively direct—a medical consultant's testimony to reach a pre-ordained conclusion. *See Younes v. Colvin*, No.

14-CV-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) ("Reviewing courts decry administrative 'cherry picking' of relevant evidence."). Nevertheless, having reviewed Dr. Ghazi's testimony, the Court is not convinced that the ALJ improperly "convinc[ed]" Dr. Ghazi "to concede that Plaintiff is able to stand and walk six hours out of an eight hour workday." ECF No. 12-1 at 24.

As the ALJ himself highlighted in his decision, Dr. Ghazi's testimony initially contained several apparent inconsistencies. *See* Tr. 24. On the one hand, Dr. Ghazi stated that Plaintiff could perform the full range of light work and had very mild arthritis in her right knee. *See* 60-61, 64. On the other hand, Dr. Ghazi testified that Plaintiff could only stand and walk for up to four hours per day and would require periodic breaks to alleviate the right-knee pain that would arise from prolonged walking. Tr. 62. To clarify the matter, the ALJ questioned Dr. Ghazi, seeking to understand his reasoning. *See* Tr. 62-64. Through that questioning, Dr. Ghazi clarified that a person's ability to stand and walk when suffering from knee arthritis would be dependent on the person's subjective tolerance for pain. *See* Tr. 63, 64; *see also* Tr. 24 ("Dr. Ghazi basically testified that whether [Plaintiff] can [sustain] six hours of walking or standing . . . is a function of pain tolerance and motivation."). Dr. Ghazi further testified that the pain resulting from "very mild to moderate arthritis," like Plaintiff's, is "easily tolerated by most people." Tr. 63. Because Plaintiff's arthritis was "very mild" and in the "earliest stage," Dr. Ghazi ultimately affirmed that she could "tolerate six hours of standing and walking." Tr. 64. The ALJ agreed with Dr. Ghazi's opinion and concluded that Plaintiff could perform the standing and walking demands of light work. Tr. 24.

From the Court's review of the transcript and the ALJ's decision, the Court cannot agree with Plaintiff's characterization that the Dr. Ghazi "succumbed to the ALJ's pressure to change

7

his testimony about the number of hours Plaintiff could be on her feet." ECF No. 16 at 6. Rather, the ALJ merely sought to understand the rationale for Dr. Ghazi's opinion and resolve apparent discrepancies in his testimony. *See* Tr. 24. This exchange does not suggest overreach or impropriety on the ALJ's part. Faced with several apparent conflicts within Dr. Ghazi's opinion, the ALJ was permitted (and, indeed, obliged) to question him further. *See Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004) (noting the ALJ's "duty to investigate and develop the facts"). And, as a result, there was no impropriety in the ALJ crediting Dr. Ghazi's opinion after obtaining clarification about it. Remand is not warranted on this basis.[3]

### ii. Plaintiff's Neck and Lifting Restrictions

As stated, Dr. Ghazi testified that Plaintiff could perform a full range of light work. *See* Tr. 60-61. During his testimony, Dr. Ghazi referenced Plaintiff's neck problems and lifting restrictions. With respect to the former, Dr. Ghazi noted that Plaintiff continued to complain of neck pain, but he did not explicitly identify any functional restrictions relating to her neck. *See id.* In seeking clarification on the point, the ALJ asked Dr. Ghazi whether there are "any restrictions based upon her neck, the problem with the neck?" Tr. 65. Dr. Ghazi responded, "Very minimal, yes." *Id.* In his decision, the ALJ construed Dr. Ghazi's testimony to mean that Plaintiff's "neck problem would not preclude light work," Tr. 24, and he did not include any functional limitations related to Plaintiff's neck complaints in the RFC. *See* Tr. 20. With respect to Plaintiff's ability to lift, the ALJ asked Dr. Ghazi whether there is any reason Plaintiff "shouldn't be able to lift 25

---

[3] In passing, Plaintiff also argues that there is evidence in the record that demonstrates that, subjectively, her right-knee pain is "debilitating." ECF No. 12-1 at 24. But "[t]he mere fact that [some] evidence could support" a more restrictive RFC "is not enough to warrant remand." *Piotrowski v. Comm'r of Soc. Sec.*, No. 18-CV-6075, 2019 WL 2266797, at *7 (W.D.N.Y. May 28, 2019). Because Plaintiff does not articulate why the ALJ could not rely on other evidence—including Dr. Ghazi's opinion, the clinical findings and observations, and Plaintiff's contemporaneous statements regarding her pain, *see* Tr. 23—to reach a contrary conclusion, remand is not warranted. *Accord id.* at *6.

pounds . . . occasionally?" Tr. 66. Dr. Ghazi replied that "[t]wenty-five pounds will be too much for her." *Id.*

Plaintiff takes issue with the ALJ's questioning on these matters. Concerning the neck problems, Plaintiff argues that the ALJ mischaracterized Dr. Ghazi's testimony because Dr. Ghazi never explicitly stated that Plaintiff's neck problem "would not preclude light work." ECF No. 12-1 at 24. Plaintiff asserts that the ALJ should have questioned Dr. Ghazi more specifically on the matter. *See id.*

The Court does not find this argument persuasive. Dr. Ghazi testified, *inter alia*, that (a) Plaintiff can perform a full range of light work, and (b) Plaintiff's neck restrictions are very minimal. Tr. 61, 65. From these statements, the ALJ reasonably inferred that, in substance, Dr. Ghazi took the view that Plaintiff's neck problem did not interfere with her ability to perform at the light exertional level. Although Dr. Ghazi may not have expressly stated that Plaintiff's "neck problem would not preclude light work," Tr. 24, that was the unambiguous thrust of his testimony, which did not require further clarification by the ALJ.

Similarly, Plaintiff faults the ALJ for failing to ask Dr. Ghazi to "specify the maximum amount of weight [she] is able to lift." ECF No. 12-1 at 25. But, again, Dr. Ghazi's testimony was unambiguous, even if it was not explicit. Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Dr. Ghazi testified that Plaintiff could perform the full range of light work, Tr. 61, a statement which is reasonably interpreted to mean that Plaintiff could lift up to twenty pounds at a time and a frequently lift ten pounds. *See* 20 C.F.R. § 404.1567(b). Dr. Ghazi later clarified that Plaintiff could not lift twenty-five pounds—a limitation consistent with these exertional

9

requirements. *See* Tr. 66. The ALJ was not required to inquire further given the plain import of Dr. Ghazi's testimony. Remand is not warranted on these grounds.

### c. Prior Administrative Decision

Plaintiff next asserts that the ALJ's decision is inconsistent with a prior decision that a different ALJ issued in connection with Plaintiff's earlier application for benefits. *See* ECF No. 12-1 at 25-26. In an earlier decision dated June 2, 2017, Administrative Law Judge Mary Mattimore concluded that Plaintiff could only perform a significantly reduced range of light work, though she ultimately found that Plaintiff was not disabled for the period between October 28, 2014 through June 2, 2017. *See* Tr. 140, 152. Plaintiff finds it unreasonable that the ALJ in the present case could have found her *more* functionally capable than Judge Mattimore did, given that she underwent two surgeries after Judge Mattimore's decision.

Plaintiff's argument fails. Where, as here, "a plaintiff's claim involves a different unadjudicated time period, an ALJ is not bound by a prior ALJ's findings." *Wessel v. Colvin*, No. 14-CV-184, 2015 WL 12712297, at *5 (D. Conn. Dec. 30, 2015); *see also Todd E.O. v. Comm'r of Soc. Sec.*, No. 20-CV-1046, 2022 WL 326629, at *5 (N.D.N.Y. Feb. 3, 2022) (noting that, according to SSA policy, the ALJ "did not err in affording no deference to [a prior] administrative decision [related to a distinct time period]"). Accordingly, Judge Mattimore's prior RFC determination did not control the ALJ's analysis, and Plaintiff's mere accusation that the discrepancy "creates the impression of an arbitrary RFC" is insufficient to justify remand. ECF No. 16 at 9.

### d. Migraine Headaches

Plaintiff testified that she suffered from headaches several times per week. Tr. 101. Each headache lasted between thirty minutes to several hours. *Id.* Symptoms could be relieved by lying

down. *Id.* At step two, the ALJ concluded that Plaintiff's migraine headaches were nonsevere. Tr. 18. He noted that Plaintiff "generally denied any headaches" during appointments, appeared alert without distress at appointments, and did not receive any treatment for migraine headaches. *Id.*; *see also, e.g.*, Tr. 798, 814, 1016. In pertinent part, the ALJ rejected the opinion of consultative examiner Hongbiao Liu, M.D., who had opined that Plaintiff would "experience interrupted scheduled activities secondary to migraine headaches." Tr. 541. The ALJ found this restriction inconsistent with Plaintiff's repeated denials of headaches and lack of treatment, as well as Dr. Liu's observation that Plaintiff was "in no acute distress" at the appointment. Tr. 25. For the same reasons, the ALJ rejected the opinion of J. Lawrence, M.D., a state-agency consultant who had included environmental limitations to account for Plaintiff's migraine headaches. *See* Tr. 25-26, 215.

Plaintiff argues that the ALJ erred by failing to include in the RFC any limitations related to her migraine headaches. She asserts that the ALJ "provided no evidence to refute" her claims about her headaches and that the ALJ "arbitrarily substituted his own judgment" for Dr. Liu's and Dr. Lawrence's "competent medical opinion." ECF No. 12-1 at 29-29. The Court is not persuaded.

"It is the ALJ's job to resolve conflicting record evidence," and the Court "must defer to that resolution." *Dyana G. o/b/o J.A.G. v. Comm'r of Soc. Sec.*, No. 19-CV-805, 2021 WL 465249, at *3 (W.D.N.Y. Feb. 9, 2021). As a result, "under the substantial evidence standard of review, it is not enough for [P]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support [her] position." *Gonzalez-Cruz v. Comm'r of Social Sec.*, 294 F. Supp. 3d 164, 187 (W.D.N.Y. 2018). That is, a claimant cannot obtain remand merely by citing "evidence that arguably supports more restrictive limitation"; she must "articulate how the

ALJ's [contrary] finding . . . was *erroneous*." *Piotrowski*, 2019 WL 2266797, at *6 (emphasis added).

In this case, and contrary to Plaintiff's argument, the ALJ expressly relied on record evidence to conclude that Plaintiff's headaches did not cause functional limitations on a day-to-day basis: in treatment notes from 2017 through 2020, Plaintiff denied suffering from headaches; she did not present with symptoms consistent with migraine headaches; and she did not seek or receive treatment for such headaches. *See* Tr. 18. The ALJ reasonably relied on this evidence to reject Plaintiff's subjective complaints about her migraine headaches. *See* 20 C.F.R. § 404.1529(c)(2), (3). And having reasonably rejected Plaintiff's claims about the severity of her headaches, the ALJ could reasonably reject any medical opinions premised on those claims. *See, e.g.*, *Cheryl A. v. Comm'r of Soc. Sec.*, No. 19-CV-1438, 2021 WL 1022442, at *3 (W.D.N.Y. Mar. 17, 2021) (ALJ reasonably rejected medical source's opinion where opinion was premised on unsupported subjective reports of claimant); *Davis v. Comm'r of Soc. Sec.*, No. 16-CV-1074, 2017 WL 7049560, at *5 (N.D.N.Y. Nov. 20, 2017). Plaintiff is not entitled to remand.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: December 12, 2022
      Rochester, New York

                                                  HON. FRANK P. GERACI, JR.
                                                  United States District Judge
                                                  Western District of New York